# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

ANTHONY Q. KELLY,      *

Plaintiff      *

v      *      Civil Action No. RDB-18-694

STATE OF MARYLAND STATE HOUSE,      *
    *et al.*,
     *

Defendants

\*\*\*

## MEMORANDUM OPINION

Plaintiff, a Maryland inmate housed at North Branch Correctional Institution, filed this civil rights action alleging that prison officials have violated his First and Eighth Amendment rights. ECF No. 1. Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 21. Although notified of his right to do so, ECF No. 22, Plaintiff has not responded to Defendants' dispositive Motion, and his time for doing so has expired.[1] The matter is now ripe for review. The Court finds a hearing in these matters unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons that follow, Defendants' dispositive Motion, construed as a Motion for Summary Judgment, is GRANTED.

## BACKGROUND

In his Complaint, Plaintiff states that, despite submitting a request slip, he was not given his monthly "welfare commissary bag" on February 27, 2018. ECF No. 1 at 3. Welfare commissary bags contain paper, writing utensils, and basic hygiene items like soap and

---

[1] Plaintiff did, however, submit correspondence stating "Plaintiff Anthony Q. Kelly's [sic] have not have [sic] a shower or shaved [in] close to six months now." ECF No. 23. Plaintiff previously made a similar statement, and the Court instructed Defendants to show cause why injunctive relief should not be granted. ECF Nos. 13, 14. In their response supported by an affidavit and certified records, Defendants demonstrated that the reason Plaintiff had not showered or shaved in several months was due to his voluntarily decision to refuse showers on multiple occasions. *See* ECF No 17 & accompanying exhibits. Plaintiff has not disputed the veracity of the Defendants' filings.

toothpaste, and are provided to indigent inmates who request them. *Id.* Plaintiff alleges that Defendants intentionally denied Plaintiff his welfare commissary bag as retaliation for Plaintiff filing lawsuits against correctional staff. *Id.* at 5. Further, Plaintiff asserts that the denial of the welfare commissary bag effectively prevents him from being able to access the courts because he is deprived of paper, pens, and related items. *Id.* at 3. Aside from the various claims arising out of Plaintiff not receiving a welfare commissary bag, Plaintiff also asserts that he has not showered or shaved in the month preceding his filing of the instant Complaint. *Id.* Plaintiff's claims of retaliation and lack of access to the court appear to arise under the First Amendment, while his claims of not showering and being denied a welfare commissary bag are Eighth Amendment claims.

Plaintiff acknowledges in his Complaint that he did not exhaust his administrative remedies prior to filing this action. *Id.* at 4. Indeed, Plaintiff mailed the Complaint on March 5, 2018, or one week after he did not receive the expected commissary bag. However, he asserts that exhaustion is not jurisdictional and "[t]hat means if you didn't exhaust and you think you have a good enough reason, the court at least has the power to consider your argument." *Id.*

Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. ECF No. 21. They assert, among other arguments, that this action must be dismissed due to Plaintiff's failure to exhaust administrative remedies. ECF No. 21-1 at 5-7.

## STANDARD OF REVIEW

Defendants' dispositive Motion is styled as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56, and Defendants submitted exhibits in support of their position. Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss."

2

*Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998). Because Defendants have filed and relied on exhibits and an affidavit attached to their dispositive Motion, the Motion shall be treated as one for summary judgment.

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). In analyzing a summary judgment motion, the court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002).

If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts. *See Matsushita Elec. Indus. Co. v. Zenith*

3

*Radio Corp.*, 475 US. 574, 585-87 & n.10 (1986). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

Additionally, while this Court is required to liberally construe pro se documents and hold them to a less stringent standard than those drafted by attorneys, *see Erickson v. Pardus*, 551 U.S. 89,94 (2007); *Estelle v. Gamble*, 429 US. 97, 106 (1976), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts that set cognizable claim, *see Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Rather, the Court must also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted).

## DISCUSSION

Defendants raise the affirmative defense that Plaintiff has failed to exhaust his administrative remedies. If Plaintiff's claim has not been properly presented through the administrative remedy procedure it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and

improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).[2]

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Bock*, 549 U.S. at 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850, 1857 (2016). Therefore, a

---

[2] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id.* at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining"[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore* 517 F.3d at 725, 729. Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original).

However, the PLRA provides that an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Ross*, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id*. at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id*. at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

The Supreme Court stated in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, Plaintiff is subject to the strict requirements of the exhaustion provisions. *See Porter v. Nussle*,

6

534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

The *Ross* Court outlined three circumstances when an administrative remedy is considered "unavailable" and an inmate's duty to exhaust available remedies "does not come into play." 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *See also Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015).

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by its prisoners for "inmate

7

complaint resolution." *See generally* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.02.28.02(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. C.S. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See* C.S. § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. COMAR 12.02.28.01 *et seq.* Therefore when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO. The ARP process consists of multiple steps, including filing a grievance with the individual responsible for managing the facility and, thereafter, the Commissioner of Correction. *See Dorsey v. Shearin*, GLR-15-3645, 2018 WL 1570246, at *5 (D. Md. Mar. 30, 2018) (detailing steps in the ARP and IGO process).

In the instant case, Plaintiff has failed to exhaust his administrative remedies, a fact that he admits in his Complaint. ECF No. 1 at 4. As of the time he filed his Complaint, he had not completed the grievance process. *See* ECF No. 21-9 (affidavit from IGO employee stating that IGO had not received a grievance from Plaintiff about welfare commissary bag or claims of retaliation). Further, Plaintiff does not suggest that the administrative grievance process was "unavailable" to him for any of the reasons identified by the Supreme Court in *Ross*. *See* 136 S. Ct. at 1859-60. Even if Plaintiff has since exhausted the administrative process as to his claims,[3] the Complaint would still be subject to dismissal for failure to exhaust because, as noted above,

---

[3] There is no suggestion in the record that Plaintiff has, in fact, done this.

exhaustion must be complete before commencing the action in this Court. Because Plaintiff has failed to exhaust, his Complaint must be dismissed.

Finally, the Court seeks to disabuse Plaintiff of the idea that exhaustion can be overlooked if "you think you have a good enough reason," an assertion that he has repeated verbatim in multiple cases. *See, e.g., Kelly v. Md. Dep't of Public Safety and Corr. Servs.*, RDB-18-2009, ECF No. 1 at 4; *Kelly v. McCarthy*, RDB-17-765, ECF No. 1 at 6; *Kelly v. Simpson*, RDB-15-3647 ECF No. 1 at 3. Failure to exhaust available administrative remedies cannot be overlooked, though, as detailed above, there are three particular circumstances under which administrative remedies are not "available" for purposes of the PLRA. However, such unavailability must be established to the Court's satisfaction; it is not enough that the Plaintiff subjectively believes he has a "good enough reason."

## CONCLUSION

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment. This action shall be closed without prejudice to Plaintiff's ability to refile this action if he properly exhausts his administrative remedies.

Additionally, the Court wishes to make clear that its consideration of this case does not negate its prior designation of Plaintiff as a three-striker under the 18 U.S.C. § 1915(g). *See Kelly v. Tichnell*, RDB-17-1545, ECF No. 8 at 4-5 (entered May 18, 2018). Rather, this case was allowed to proceed only because Plaintiff filed the instant complaint before he received the three-strikes designation. The limitations flowing from Plaintiff's three-strikes designation remain in effect for all actions filed after May 18, 2018.

A separate Order follows.

_SEPTEMBER 14, 2018_
Date

_/s/ Richard D. Bennett_
RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE